(No. 00005␣␣␣␣␣␣␣␣)

DOLORES GEORGEAN, as widow and beneficiary of NICK GEORGEAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 11, 1973.*

DOLORES GEORGEAN, Claimant, pro se.

WILLIAM J. SCOTT, Attorney General; VINCENT BISKUPIC, Special Assistant Attorney General and SAUL R. WEXLER, Assistant Attorney General, for Respondent.

PER CURIAM.

This action is brought by DOLORES GEORGEAN, as widow and designated beneficiary of NICK GEORGEAN, deceased, pursuant to the "Law Enforcement Officers and Firemen Compensation Act," *Ch. 48, Sec. 281 et seq., Ill.Rev.Stat., 1971.*

Claimant filed an application for benefits, a statement of the decedent's supervising officer, designation of beneficiary, and coroner's certificate of death. The Attorney General's office investigated the claim, pursuant to Section 4 of the Act, and recommended that the case be set for hearing. The court, sitting *en banc*, heard the case on August 4, 1972.

The relevant facts, briefly, are as follows: the decedent, Nick Georgean, was an employee of the Office of the Secretary of State. He was hired on January 24, 1971, and served as an assistant supply officer from February 1, 1971, until the date of his death, July 23, 1971. His duties were clerical in nature, consisting of making entries in a large log book of all traffic citations and convictions. He was also responsible for preparing various reports, notifying investigators of court dates, and occasionally accompanying investigators to court. It appeared that the decedent also assisted in the requisition and distribution of equipment, uniforms, guns, and official documents. On July 23, 1971, the decedent reported for work at approximately 8:30 a.m. During the course of the day he distributed booklets and other reference material in the supply room. He also had occasion, at least six times that day, to make entries in the log book, which weighed approximately 33 pounds. The book was an exhibit at the hearing. At approximately 2:50 p.m. Mr. Georgean collapsed. Emergency first aid was administered, and an ambulance

called. Mr. Georgean was pronounced dead on arrival at Loretto Hospital at approximately 3:40 p.m.

The cause of death, according to the Coroner's Certificate of Death, was myocardial infarction. No medical evidence was introduced at the hearing. Testifying at the hearing on behalf of claimant were the claimant herself, Robert D. Kutz, an assistant superintendent in the Secretary of State's office, and Lieutenant Wilbur Coffey of the Secretary of State's office.

There are two issues before this court: 1) was the decedent a "law enforcement officer" as defined in Section 281 of the Act; and 2) was the decedent "killed in the line of duty" within the meaning of the Act.

The testimony elicited before the court was to the effect that the decedent was an investigator in the Office of the Secretary of State; he wore a uniform and carried a gun. His actual title was "Assistant Supply Officer." While there was testimony as to some of the hazards encountered by investigators for the Secretary, it seems clear that these were not the type that the decedent faced. Except for certain infrequent occasions, the decedent's duties were purely clerical; these were the duties he was performing on the date of his death.

There were several obvious contradictions in the testimony of claimant's witnesses. However, considering all the facts presented to the court, it is our opinion that the decedent was not a "law enforcement officer" within the meaning of the statute as we interpret it.

We are bound by the following statutory definition stated in the Act:

"Section 281(a) 'law enforcement officer' or 'officer' means any person employed by the State or a local governmental entity as a policeman, peace officer or in some like position involving the enforcement of the law and protection of the public interest *at the risk of that person's life*." (emphasis added.)

The test is whether the "officer" is charged with "the enforcement of the law and protection of the public interest *at the risk of his life."*

The decedent here, while undoubtedly performing a valuable service to the community, did not face the perils of a police officer as contemplated by the statute. We must view this Act to be limited by the words emphasized in the above definition.

The apparent intent of the legislature, when it enacted this law, was to compensate beneficiaries of firemen and law enforcement officers who had *risked their lives* in the public interest. At the time the legislation was passed, the media was full of incidents of snipings and violent deaths of policemen and firemen. The words of limitation in the Act clearly indicate that the legislature did not intend to compensate any person in uniform for a death unrelated to the risks inherent in and peculiar to the professions of firefighting and law enforcement. Such a construction might have even made the Act unconstitutional as "Special legislation" referred to in the *1970 Illinois Constitution, Article IV, §13.* We are confident that this was not the legislature's intent. It is our obligation, as it is of all courts of record, to presume that the legislation is valid and constitutional where it can be so construed. *11 I.L.P. Constitutional Law §67.*

Mr. Kutz and Lieutenant Coffey testified as to the general nature of duties for investigators of the Secretary of State's office. This testimony was impeached, however, by the admission into evidence of Attorney General's Exhibit 1) affidavit executed by Coffey, which reflected that, with the exception of the first week of his employment, the decedent's duties had no bearing on any law enforcement obligation. Accordingly, while some Secretary of State's "investigators," assigned to hazardous duties, might be

eligible "officers" under this Act, the decedent in this case was not.

Having found that the decedent did not come within the statutory definition of a "law enforcement officer", it is not necessary for the court to consider the second issue presented. However, some ambiguity in the statute, as well as the recurring question in other cases, necessitates some general guidelines and principles regarding heart-attack cases.

In determining when an officer's death from a heart attack may be compensable under the Act, we must carefully consider the definition of the term "killed in the line of duty" given to us in Section 281(e) of the Act which reads as follows:

> "Section 281(e) *'killed in the line of duty'* means losing one's life as a result of injury received in the active performance of duties as a law enforcement officer or if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause . . ."

Except for the words "or other accidental cause", the meaning of the above section is perfectly clear. However, the ambiguous words must be considered in the light of the following rule stated in *I.L.P. Statute §123*:

> "In construing a statute to ascertain the intention of the intention of the General Assembly, the statute should be construed as a whole or in its entirety, and the legislative intent gathered from the entire statute rather than from any one part thereof.
>
> "All parts, provision, or sections of a statute must be read, considered, or construed together, in the light of the general purpose and object of the statute, so as to make it harmonious and consistent in all its parts and to give effect, if possible, to all such parts."

Therefore, Section 282(e) must be construed *in pari materia* with §5 which notes that compensation under this Act is in addition to, and not exclusive of, any pension rights, death benefits or other compensation otherwise payable by law. In short, this Act creates a special statutory remedy in addition to any other remedy, either statutory or common-law, which the decedent's heirs might have.

Hence we believe that, considering the general purpose of the special Act, the legislature did not intend to compensate the survivors of those officers and firemen whose deaths were not directly attributable to the risks inherent to their profession. It can be said, therefore, that where the heart-attack is the result of such a peril inherent to, and as the result of stress arising from the acts of law enforcement or firefighting, then the claim is compensable. If the heart-attack results from non-firefighting or non-law enforcement duties, or even from such duties which do not require some special stress or strain on the heart, then the officer was not "killed in the line of duty" within the meaning of the Act.

In summary, it is our opinion that the legislature intended to compensate the survivors of law enforcement officers and firemen who were exposed to risks greater than those to which the public is exposed. There is no rationale for compensating survivors of policemen or firemen who died as the result of mundane activities which did not involve special resk to their decedents' persons.

This court finds that the decedent, NICK GEORGEAN, was not a "law enforcement officer" within the meaning of this Act and therefore denies the claim presented herein.