(No. 00151—

## In re APPLICATION OF MARY E. PARCHERT.

*Opinion filed June 4, 1980.*

MARSHALL E. DOUGLAS, for Claimant.

WILLIAM J. SCOTT, Attorney General (JAMES S. STEPHENSON, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

This claim arises out of the death of a deputy sheriff for Rock Island County, Illinois. The decedent's beneficiary seeks payment of compensation pursuant to the provisions of the Law Enforcement Officers and Firemen Compensation Act, hereinafter referred to as the Act. Ill. Rev. Stat. 1977, ch. 48, par. 281 *et seq.*

The applicant for these benefits is Mary E. Parchert, the wife of the decedent. She is the beneficiary desig-

nated by him as evidenced by the form completed by him and by the application submitted by her. Subsequent to the filing of her claim, Mrs. Parchert died. Thus at the outset we must first determine whether or not a claim for benefits under the Act survives the death of the applicant. This is an issue of first impression in this Court. There is no language in the Act itself which explicitly deals with the issue. However, the obvious purpose and legislative intent of the Act were to compensate the designated beneficiaries or, in event there are none, the families of law enforcement officers and firemen killed in the line of duty. A finding that the cause of action survives would further the purpose of the Act and we believe it would be consistent with the legislative intent. The right to compensation is not a personal right in the sense that benefits under the "Blind Relief Act" were personal in *Creighton v. County of Pope* (1944), 386 Ill. 468; the right vests in the whomever is designated by the law enforcement officer of firemen or his family at the time he dies in the line of duty. We find that a cause of action under the Act does survive the death of a *named* beneficiary who is alive at the time of death of the law enforcement officer or firemen.

At the hearing, the attorney for the applicant entered a suggestion of death in the record. No substitution of named parties was made. This is a matter of form only. The Respondent has not raised any issues relating to the proper form pursuant to the Civil Practice Act (Ill. Rev. Stat., ch. 110, par. 54(2)) and the Court raises no motion pursuant thereto on its own.

We turn now to the merits of the case. This Court has carefully considered the application for benefits, the statement of decedent's supervising officer, the death certificate, the investigatory report of the Rock Island Sheriff's Police, an evidence deposition of decedent's

regular physician, the evidence adduced at a hearing before the full Court on March 15, 1979, and briefs and arguments of counsel for both Claimant and the Attorney General of the State of Illinois. Based upon this evidence the Court finds as follows:

The deceased, Clair Adam Parchert, was employed as a deputy sheriff by Rock Island County. On February 23, 1978, he was assigned to serve civil process on a party residing at 141st Avenue, Milan, Illinois. In order to reach that address Mr. Parchert entered a driveway at 14205 Coyne Center Road. Approximately two-thirds of the way up the driveway the deceased's automobile became stuck in the snow.

The sheriff's department car with which he was provided on this day was not equipped with any radio device to allow decedent to communicate with the sheriff's radio network. Unable to call for assistance, Mr. Parchert made an attempt to extricate the vehicle by himself. The evidence showed that he made his way to a nearby machine shed and secured a shovel.

At 4:10 p.m. on this date, a civilian found Mr. Parchert dead behind the wheel of the squad car, his head resting against the headrest and holding a cigarette in his right hand. Evidence indicated that prior to his death the decedent had tried to shovel snow from around the car. A snow shovel was found in the snow at the rear of the car and snow had been shoveled away from both the front and the rear of the car. The immediate cause of death was determined to be a coronary occlusion.

Section 3 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 283) provides that if a claim is made for compensation pursuant to the Act, within one year of the date of death of a law enforcement officer killed in the line of duty,

compensation in the sum of $20,000.00 shall be paid. There is no dispute as to whether or not petitioner has complied with all of the procedural requirements of the Act. The issue in this case is whether or not the decedent, Mr. Parchert, was "killed in the line of duty" within the meaning of the Act.

Section 2(e) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 282(e)) defines "killed in the line of duty" as losing one's life as a result of injury received in the active performance of duties as a law enforcement officer if death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause. Although his section of the Act is not conductive to a precise delineation of eligibility for compensation in all cases, and incidents of death resulting from heart ailments comprise the most difficult cases, it is the sole criteria that the Legislature has provided. Since the Act was passed a significant body of case law has developed. Because the legislature has remained silent in wake of the way this Court has interpreted the Act in the past, we must continue to administer the Act literally. *Carr v. State of Illinois* (1974), 29 Ill. Ct. Cl. 540, 543; *Allen v. State of Illinois* (1974), 29 Ill. Ct. Cl. 543, 545, 546.

In their briefs both parties to this case placed heavy reliance on *Georgean v. State* (1973), 28 Ill. Ct. Cl. 408. The applicant in that case was denied benefits under the Act because he did not come within the statutory definition of a "law enforcement officer." From the statutory language defining a "law enforcement officer", section 2(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 282(a)), a test was set forth:

"The test is whether the 'officer' is charged with 'the enforcement of the law and protection of the public interest *at the risk of his life.'*" 28 Ill. Ct. Cl. 408, 411.

*Georgean* turned on whether or not the applicant was a law enforcement officer as defined in the Act; there is no question that Mr. Parchert was such an officer. The duties of a deputy sheriff are different from those of the clerical employee of the Secretary of State's Office in *Georgean*. Thus the holding in *Georgean* is inapposite to resolution of the issue in the case at bar.

However, certain guidelines and principles regarding heart attack cases were set forth as dicta in *Georgean*. Those guidelines related to the words "or other accidental cause," as found in the statutory definition of "killed in the line of duty." They were derived from what the Court determined to be the intent of the General Assembly when it passed the Act and were summarized as follows:

In summary, it is our opinion that the legislature intended to compensate the survivors of law enforcement officers and firemen who were exposed to risks greater than those to which the public is exposed. 28 Ill. Ct. Cl. 408, 413.

Since *Georgean* we have had occasion to apply the Act to other sets of facts. Although the causal connection between the incident and the death remains the difficult issue in heart attack cases, the analysis of the risks involved remains the same for all cases arising under the Act. The following is a list of some cases decided after *Georgean* wherein the Court granted awards:

*Birkshire v. State* (1973), 28 Ill. Ct. Cl. 417.
> After responding to a call regarding a runaway horse, decedent mounted the horse and subsequently fell off, striking his head and dying.

*Haupt v. State* (1974), 30 Ill. Ct. Cl. 1081.
> Decedent was called to work to replace a radio operator. After arriving at the station he exited the car and was bending over toward his wife when his gun fell, discharged, and fatally wounded him.

*Mackey v. State* (1976), 31 Ill. Ct. Cl. 607.
> Decedent was killed while driving a car on routine patrol when his car collided with a bus.

*Elliott v.State* (1976), 31 Ill. Ct. Cl. 607.
> Game Warden was killed when car in which he was riding collided with a semi-tractor truck.

*Maltby v. State* (1976), 31 Ill. Ct. Cl. 608.
> Decedent died in auto accident en route to pick up a prisoner to be transported.

*Hardie v. State* (1977), 32 Ill. Ct. Cl. ___.
 Decedent was painting firehouse per orders, fell from ladder breaking his leg, and died two days later in hospital following surgery.
*Rusnak v. State* (1977), 31 Ill. Ct. Cl. ___.
 Officer died in auto wreck while investigating auto theft.
*Janowski v. State, No. 161,* filed December 4, 1979.
 Civilian ran a red light and collided with patrol car killing officer inside.

In *Carr v. State, supra,* and *Allen v. State, supra,* two game wardens on patrol duty were killed when the car in which they were riding collided with a car driven by a civilian which crossed over the center line. In interpreting the phrase "other accidental cause" in the section of the Act defining "killed in the line of duty" we said:

"We are mindful of the fact that the Legislature's intent cannot always be determined from particular clause or phrase without considering the general purposes of the Act when reading it as a whole. There are other parts of the Act, as in Sec. 2(a), which lead us to believe that *'other* accidental cause' should include only such accidents that arise from the risks inherent in, and peculiar to, the duties of law enforcement; and that it would not include a normal hazard to which other persons may be equally exposed, *i.e.* a highway accident caused by the negligence or wrongful act of another party. Nevertheless, we agree with claimant's memorandum, that the legislature added no such qualifying words to the phrase, 'or other accidental cause.' We urge the legislature to consider the necessity of clarifying this phrase, as we have indicated, so that the true intent of the legislature may be fully carried out, as mandated in Ill. Rev. Stat., 1971, ch. 131, Sec. 1.01. Until the phrase in question is so clarified, we must administer the Act literally, as we have done in this opinion." *Carr,* 29 Ill. Ct. Cl. 540, 542-43; *Allen,* 29 Ill. Ct. Cl. 543, 545-46.

In the case at bar, the Respondent, citing *Georgean,* argues in his brief that shoveling snow was not an activity which posed risks inherant in the job of law enforcement. Analyzing the risk encountered by Deputy Parchert in light of what we said and decided in cases after *Georgean,* we disagree. The Legislature has not amended the Act with any qualifying language. If intent of the Legislature in enacting the statute differed from the way this Court has interpreted it, it is their prerogative to enact changes. Deputy Parchert was assigned to serve process on a day when there was a significant accumulation of snow on the ground at a location which had not

been shoveled out and had been provided with a car not equipped with a two-way radio. We therefore find that the risks he encountered in performing his assigned duties were such as to qualify for compensation under the Act.

It remains to be discussed whether or not Deputy Parchert lost his life as a result of injury received in the active performance of his duties as a law enforcement officer, such injury arising from some accidental cause. The coroner's certificate of death recites coronary occlusion as the immediate cause of death. This Court has on numerous occasions granted compensation to victims of heart attacks. The determining factors are the circumstances leading up to the heart attack.

The decedent was charged with the responsibility of serving civil process. While performing this duty his car became stuck in the snow. At the location where the car became stuck it was difficult, if not impossible to secure assistance in extricating the vehicle. The squad car had not been equipped with communications devices. He chose a logical course of action. In order to continue in the performance of his duties Deputy Parchert attempted to free the vehicle himself by trying to shovel the snow from around it. He subsequently suffered a heart attack and died.

There was also evidence indicating that the deceased was a heavy smoker, was overweight, had high blood pressure, and suffered from arteriosclerosis and hypertension. It was the opinion of Dr. McClellan, decedent's physician, that heart attacks from shoveling snow are common, particularly among those with a medical history similar to decedent's. Strenuous exercise in cold weather, such as shoveling snow, greatly increases the amount of work the heart is required to do. Although his death might not have occurred as it did if he had been

in better physical condition, coverage under the Act is not limited to healthy policemen and firemen. *Macek v. State* (1974), 30 Ill. Ct. Cl. 1071; *Hill v. State* (1974), 30 Ill. Ct. Cl. 1073; *Finlen v. State* (1974), 30 Ill. Ct. Cl. 1076.

Taking all of the circumstances surrounding the death of Deputy Parchert in consideration we conclude that he did lose his life as a result of injury arising from accidental cause and received in the active performance of his duties as a law enforcement officer. We further find that he was killed in the line of duty as defined in section 2(e) of the Act, that the proof submitted in support of this claim satisfies all of the requirements of the Act, and that the claim is therefore compensable thereunder.

It is hereby ordered that the sum of $20,000.00 be and hereby is awarded to the estate of Mary E. Parchert.