(No. 81-CC-2815– ▇▇▇▇▇▇▇▇

*In re* APPLICATION OF BERNICE SCHULTZ.

*Opinion filed March 1, 1982.*

MICHAEL A. BUCK, for Claimant.

TYRONE C. FAHNER, Attorney General (JOHN R. FANONE, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

This is a claim by a widow, the statutory beneficiary of Captain Alfred A. Schultz, formerly of the East Hazel Crest Volunteer Fire Department who died on October 13, 1979, for benefits under the provisions of the Law Enforcement Officers and Firemen Compensation Act (hereinafter referred to as the Act). Ill. Rev. Stat. 1977, ch. 48, par. 281 *et seq.*

The issue presented for determination by the Court is whether decedent was killed in the line of duty as contemplated by the Act and more specifically whether his life was lost as a result of injury received in the active performance of duties as a fireman and whether the injury arose from violence or other accidental causes.

On the date of his death, Captain Schultz was a fireman with the East Hazel Crest Fire Department. He was a captain whose duties were to take charge in the absence of a chief or assistant chief. Captain William N. Vallow testified that the decedent began duty on October 12, 1979, at 1:15 p.m. At approximately 9:00 p.m. Captain Vallow received a call for mutual aid by the Harvey Fire Department inasmuch as the Harvey Fire Department had responded to a train wreck involving two fatalities and 48 injuries. The chief dispatched five men to Harvey to man the Harvey Fire Station. The balance of the East Hazel Crest crew stood by in East Hazel Crest. The decedent stayed with the balance of the men at the East Hazel Crest Fire Department. This procedure was by virtue of an agreement between the two departments.

At 9:40 p.m. Chief Vallow, Assistant Chief Prater, the decedent and others, including an emergency medical technician, proceeded to the scene of the wreck. There was no additional call for help by the Harvey Fire Department, but the group proceeded to the scene because they thought they might be of some assistance. They travelled to the scene in Chief Vallow's private automobile. Exiting their car, they walked to the scene of the wreck and were told that everything was well under control, that the injured people had been removed from the cars and most had been taken to hospitals. The Harvey Fire Department personnel were, at that time, trying to extricate one of the fatalities from the wreck

but were having some difficulty. The group from East Hazel Crest decided to stay on the scene thinking they might be of assistance in the use of hydraulic lifting, porta powers or bridging materials.

After observing the scene for about one-half hour, the decedent and his associates proceeded to climb the embankment where the wreck was located. The embankment they climbed was approximately 18 feet high, 35 feet long and angled upward about 60 degrees. A rope had been strung from the bottom to the top of the embankment to assist persons in climbing it.

Chief Vallow, a firefighter for 30 years, testified that he had occasions in the past where he had stayed at the scene of a disaster after being told that no further assistance was needed and that this was good practice because, being officers of command responsibilities, they might have been of assistance in extricating persons from the wreckage.

After arriving at the top of the embankment, the decedent stated that he had a hard time breathing and was seen gasping for air. The color of his face was white. This was the first indication that evening that the decedent was feeling ill.

After resting at the top of the embankment, the decedent and his associates proceeded down to their automobile and drove to the East Hazel Crest Fire Department Station where an ambulance took the decedent to St. James Hospital. The decedent was pronounced dead on arrival at the hospital at 12:55 a.m. on October 13, 1979. The medical examiner's certificate of death listed the immediate cause of death as congestive heart failure as a consequence of arteriosclerotic cardiovascular disease.

Section 2(e) of the Act provides a definition of "killed in the line of duty" as follows:

"(e) 'killed in the line of duty' means losing one's life as a result of injury received in the active performance of duties as a law enforcement officer or fireman if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental causes . . ." Ill. Rev. Stat. 1977, ch. 48, par. 282(e).

Inasmuch as the decedent died shortly after the incident, it is agreed that the time limitation is no bar to recovery in this case.

The questions then are:

1. Did the decedent lose his life in the active performance of duties as a fireman and;

2. Did his death result from injury which arose from violence or other accidental causes?

As to the first question, it is our opinion that the decedent was in the actual performance of his duties as a fireman. The duties of a fireman are not merely fighting fires. Fireman are called upon to perform many other life saving tasks. Extricating persons from the wreckage of major disasters is certainly among the responsibilities of firemen. Although the decedent was not specifically requested by the Harvey Fire Department to go to the scene, his presence was desirable and might have been useful and his initiative and that of his chief, Chief Vallow, was commendable. Chief Vallow felt that this was good practice. Certainly, under the circumstances, the decedent was acting in his capacity as a fireman rather than in his capacity as a private citizen. He was, therefore, in our opinion, in the active performance of his duties as a fireman. As we stated in *In re Application of Woodworth* (1981), 34 Ill. Ct. Cl. 298, 299:

"The Act is concerned with providing additional compensation to those certain members of the public who perform services on behalf of governmental agencies which benefit the public as a whole . . . having voluntarily

given of his time, Woodworth was stricken with a fatal heart attack while responding to a call to aid a trapped motorist. Under these circumstances we find this claim is compensable under the Act."

In the instant case, decedent voluntarily sought to aid a person trapped in train wreckage. Although the parties came to the scene in a private automobile, he was engaged in more than a private pastime.

As to the second question, it is our opinion that the decedent suffered from an accidental injury. In the cases previously decided by this Court which granted awards in cases of heart attack, no particular traumatic experience has been found to be necessary. Arduous activity is within the scope of the Act. See *Hill v. State* (1974), 30 Ill. Ct. Cl. 1073; *O'Neil v. State* (1973), 29 Ill. Ct. Cl. 529; *In re Application of Woodworth* (1981), 34 Ill. Ct. Cl. 298; *In re Application of Parchert* (1980), 33 Ill. Ct. Cl. 312.

In the instant case, decedent had not prior to climbing the embankment suffered any physical distress. He climbed an 18-foot embankment so steep that it required a rope to help people climb up and down. Decedent's difficulty in breathing commenced at the top of the embankment after this arduous climb. It is clear that decedent's heart attack was proximately related to the climb up the embankment.

It is therefore ordered that the statutory award of $20,000.00 be, and hereby is, awarded to the applicant, Bernice Schultz.