(No. 85-CC-2691-▮▮▮▮▮▮▮▮▮▮)

IN RE APPLICATION OF DARLENE D. SMITH

*Opinion filed July 12, 1990.*

PETER F. FERRACUTI, for Claimant.

NEIL F. HARTIGAN, Attorney General (JOHN R. BUCKLEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MONTANA, C.J.

This is a claim for compensation arising out of the death of Deputy Sheriff Walter Smith, the chief jailor of the La Salle County Sheriff's Office at the Criminal Justice Center in Ottawa, Illinois (La Salle County Jail), pursuant to the provisions of the Law Enforcement Officers, Civil Defense Workers, Civil Air Patrol Members, Paramedics, Firemen and State Employees Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 281 *et seq.* (the Act)). Deputy Smith suffered a heart attack at the jail on May 6, 1984, and died at a hospital later the same day.

On August 9, 1985, this Court entered an order which assigned this claim to a commissioner for the purpose of determining:

1. Whether the decedent, in his capacity as chief jailor at the La Salle County Jail, was a "law enforcement officer" or "officer" as those terms are defined in section 2(a) of the Act.

2. Whether the decedent was "killed in the line of duty" as the phrase is defined in section 2(e) of the Act.

Both parties have filed briefs and the commissioner has duly filed his report.

In regard to the first issue, whether the decedent in his capacity as chief jailor at the La Salle County Jail was a "law enforcement officer" or "officer" as those terms

are defined in the Act. Section 2(a) of the Act provides, in relevant part, that:

"(a) 'law enforcement officer' or 'officer' means any person employed by the State or a local governmental entity as a policeman, peace officer, auxiliary policeman or in some like position involving the enforcement of the law and protection of the public interest at the risk of that person's life. This includes supervisors, wardens, superintendents and their assistants, guards and keepers, correctional officers, youth supervisors, parole agents, school teachers and correctional counsellors in all facilities of both the Juvenile and Adult Divisions of the Department of Corrections, while within the facilities under the control of the Department of Corrections or in the act of transporting inmates or wards from one location to another or while performing their official duties, and all other Department of Correction employees who have daily contact with inmates."

While the above definition includes guards and keepers of the Department of Corrections, it does not specifically include a guard or keeper employed by a county sheriff's office. However, the Attorney General of the State of Illinois determined in his opinion No. S-1465, dated November 2, 1979, that corrections officers at the St. Clair County Jail were "law enforcement officers" or "officers" within the meaning of section 2(a) of the Act because their duties involved the enforcement of the laws and the protection of the public interest at the risk of the lives of the officers. It appears from the record that the duties of Deputy Smith at La Salle County Jail were similar to those of the officers at the St. Clair County Jail. Although an Attorney General's opinion is not binding on this Court we find the reasoning persuasive and therefore find that Deputy Sheriff Smith, in his capacity as chief jailor at the La Salle County Jail, was a "law enforcement officer" or "officer" within the meaning of section 2(a) of the Act.

The second issue before the Court is whether the decedent was "killed in the line of duty" as the phrase is defined in the Act. Section 2(e) of the Act provides, in relevant part, that:

"(e) 'killed in the line of duty' means losing one's life as a result of injury received in the active performance of duties as a law enforcement officer, civil defense worker, civil air patrol member, paramedic or fireman if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause."

There is no question that Deputy Smith was in the active performance of his duties as a law enforcement officer when he suffered his injury, the fatal myocardial infarction, and, that his death occurred within one year from the date the injury was received. However, for an officer to have been "killed in the line of duty" for the purposes of granting an award pursuant to the Act, it must also be shown that the injury arose from violence or other accidental cause. There is no evidence that Deputy Smith died as the result of violence, so the issue is whether his injury arose from other accidental cause.

Cases involving heart attacks are among the most difficult presented to this Court. The Court recognizes that police work involves stress and strain which can lead to heart attacks. In deciding whether an award should be granted an effort is made to determine whether the activities the decedent was performing precipitated the heart attack. In cases where a decedent is performing strenuous physical activities at the time the attack is suffered, the Court has consistently granted awards. However, in cases where the decedent was not performing strenuous physical activities when the heart attack was suffered, the Court must closely examine whether the circumstances surrounding the decedent's performance of duties prior to the time the fatal heart attack was suffered may have precipitated the attack. As the Court stated in *In re Application of Mary Feehan* (1980), 34 Ill. Ct. Cl. 293, 296:

"In so doing we need not limit our examination to a single stressful or strenuous event such as in *Burgholzer* (1973), 28 Ill. Ct. Cl. 406; *McBurney* (1972), 28 Ill. Ct. Cl. 404; or *O'Neill* (1973), 29 Ill. Ct. Cl. 529. While the heart

attack must have been a result of the active performance of duty, in certain cases it becomes relevant to look at circumstances and events further preceding the death than those occurring solely on the day of the heart attack as far as is practical and not overly remote. A pattern of exigent circumstances may in some cases have a cumulative effect of leading up to and resulting in a heart attack. This is a difficult determination to make but one which nevertheless must be made in administering the Act without the benefit of clear and concise standards and in taking into account the physiological realities of heart attack causation."

The record indicates that Deputy Smith was the chief jailor of the jail facility. According to the evidence deposition of Russell Wahl, the Sheriff of La Salle County, Deputy Smith in his capacity as chief jailor was responsible to Sheriff Wahl for the entire operation of the jail and for following Department of Corrections rules and regulations. In addition to the responsibility of keeping the prisoners held securely within the jail, Deputy Smith was responsible for protecting the prisoners from each other as well as protecting the public while escorting prisoners to court. Deputy Smith was also responsible for handling the complaints of the prisoners and negotiating with them regarding the complaints. Deputy Smith supervised nine correctional officers as well as three cooks who prepared the inmates' meals.

Sheriff Wahl's deposition also indicates that the capacity of the jail was forty-five or forty-six inmates. At the time of Deputy Smith's death the average inmate population was beyond normal capacity. Three officers were assigned to work each shift at the jail, but due to a staff shortage only Deputy Smith and one other officer were working on the day Deputy Smith died. Because of staffing problems, Deputy Smith worked overtime, double shifts, and would come in at night to work if a problem developed. When he suffered the heart attack he was working on what normally would be a day off. He had worked thirteen straight days prior to the day he suffered the heart attack. At the time of his death

Deputy Smith had accumulated eighty days of compensatory time.

Sheriff Wahl's deposition further indicates that when Deputy Smith reported on duty his work station would be the control room. The control room contained the video monitors, fire alarms, and electronic switches which operate the doors of the jail. At the time of Deputy Smith's death, the video monitors were not working properly, so someone would be required to check on the galleys and hallways of the jail in person. Sheriff Wahl indicated that because the monitoring system wasn't working properly, the job of the jailor required a great deal of walking because the jail had to be monitored in person. Once during the month prior to his death Deputy Smith was attacked by a mentally ill inmate while investigating an incident within the jail. Sheriff Wahl said that Deputy Smith had indicated he had been having pain in his legs and would be stiff-legged after work.

On the day of his death Deputy Smith arrived at work sometime between 7:30 and 8:00 a.m. It was visiting day at the jail. In addition to usual jail monitoring duties, the evidence deposition of Lieutenant Tom Templeton, a co-worker of Deputy Smith, indicates that a jailor's duties on visiting day involved escorting prisoners three at a time from their cells to the visiting area, waiting the fifteen-minute visiting period and then escorting the prisoners back to their cells. This would be repeated by the jailors until all the visitors had left. Deputy Smith participated in escorting the prisoners.

Lieutenant Templeton's deposition further indicates that after the visiting had started he was summoned from the front window where he was working as desk officer to the control room where he found Deputy

Smith with his face down on the jailor's desk. Lieutenant Templeton summoned an ambulance and helped administer oxygen to Deputy Smith. Deputy Smith was taken to the Community Hospital of Ottawa where he expired due to a myocardial infarction.

An evidence deposition of Dr. Robert F. Bettasso which was taken for a proceeding concerning Deputy Smith's death before the Industrial Commission was submitted into evidence by the Claimant. The Respondent did not submit any medical evidence into the record in this claim.

The deposition shows that Deputy Smith had suffered two prior myocardial infarctions and experienced significant hypertension. Dr. Bettasso indicated in the deposition that in the presence of coronary artery disease, stressful situations may precipitate a myorcardial infarction. When asked of the significance from a stress standpoint that Deputy Smith had been working thirteen straight days prior to his death and had been averaging some eighty hours a week for several months prior to his death, Dr. Bettasso responded on pages 26 and 27 of the deposition:

"Well, only from the fact that it is stressful. Circumstances without any release, time is definitely a factor in my consideration of stress with no—for 13 days I believe you mentioned that he worked continuously under a stressful circumstances which this job obviously can produce."

In responding to a hypothetical situation involving factors such as Deputy Smith's duties and condition and their relation to the fatal myocardial infarction Dr. Bettasso stated on pages 25 and 26 of the deposition:

"I can relate to the factors that were presented to me in the hypothetical of the stressful circumstances for which one can envision a person who is responsible for a jail site where the circumstances are changing from day to day and can be very stressful dealing with mental patients who are to be confined, or prisoners who are unfortunately so endowed mentally that they are difficult to deal with, having personal experience with these including

the mental patients and the physical requirement that are sometimes mandated not only as a jail superintendent who would have also the administrative responsibility but also for personnel who have to deal with these type of people, that they are very stressful and can precipitate such situations as rapid heart beats, hypertensive episodes. And these are all factors which can in fact be a factor of precipitating, in the proper soil with coronary artery disease."

This claim presents a situation similar to the case of *Feehan, supra.* In *Feehan* the decedent, a police officer, suffered a fatal heart attack after testifying in a burglary case he had handled. Prior to suffering the heart attack Officer Feehan had been working an extraordinary amount of overtime beyond a normal forty-hour work week. When Officer Feehan was off duty he was on call. His work consisted of investigating crimes committed and about to be committed, making arrests, performing searches, and conducting surveillance and stakeouts in connection with a burglary and drug dealing. In granting an award the Court determined that the extraordinary amount of overtime worked combined with the stressful nature of Officer Feehan's duties had the cumulative effect of leading up to and resulting in the fatal heart attack.

Prior to his fatal heart attack, Deputy Smith had been working overtime, double shifts, and was on call if problems developed. The day he suffered the fatal heart attack was his fourteenth straight day of work. He was responsible for supervising the entire operation of the jail as well as working as a jailor interacting directly with prisoners. A combination of factors, including a jail population at capacity or beyond capacity, staff shortages, and defective jail monitoring equipment created an extremely stressful work environment.

Based on the foregoing we find that the specific facts in this case constitute a compensable claim under

the Act in that the exigent circumstances involving extraordinary long hours spent in the active performance of duties in a stressful environment had the cumulative effect of resulting in the death of Deputy Smith. We further find that such facts constitute injury arising from "other accidental cause."

It appears from the record that at the time of his death Deputy Smith did not have a designation of beneficiary form on file showing who should receive an award under the Act. Section 3(a) of the Act therefore requires that the Claimant receive the entire amount payable since she is the surviving spouse of Deputy Smith.

Wherefore, it is hereby ordered that an award of $50,000.00 be, and is, hereby granted to Darlene D. Smith, the surviving spouse and statutory beneficiary of Deputy Sheriff Walter Smith.