(No. 94-CC-2390– )

*In re* APPLICATION OF NANCY KOLOWSKI

*Opinion filed August 23, 1995.*

JOHN M. HOSTENY, for Claimant.

JIM RYAN, Attorney General (CHAD FORNOFF, Assistant Attorney General, of counsel), for Respondent.

OPINION

PATCHETT, J.

This cause comes before the Court upon the claim filed herein by the Claimant, Nancy Kolowski, the widow of Robert Kolowski, for benefits under the provisions of the Law Enforcement Officers, Civil Defense Workers, Civil Air Patrol Members, Paramedics, Firemen, and

State Employees' Compensation Act ("the Act"). 820 ILCS 315/1 *et seq.*

The Claimant seeks to recover under the Act for the death of her husband who died of a heart attack while on duty as a special agent with the Illinois State Police—Division of Criminal Investigation.

The Claimant is the designated beneficiary of Robert Kolowski. On February 25, 1993, Robert Kolowski was on duty in his assigned squad car en route to interview local gun dealers pursuant to a firearm owners' identification card violation. He suffered a heart attack in the parking lot of Division 5 headquarters at approximately 3:15 p.m. He was rushed by ambulance to St. Joseph Hospital, where he was pronounced dead at 4:37 p.m.

Although the decedent was not performing strenuous physical activities when he suffered his heart attack, a close examination of the circumstances surrounding his performance of duties prior to the time of the fatal heart attack shows that these circumstances may have precipitated the heart attack. Special Agent Kolowski was involved in a job that is, by nature, very strenuous. Additionally, the decedent was involved in a shooting in 1980, and he suffered nightmares about this incident up to the time of his death. Only days before his heart attack, the decedent worked a 13-hour day and an 18-hour day that culminated in drug arrests in extremely cold temperatures. The decedent was further involved in unloading, loading, and transporting over 300 pounds of cannabis at the end of the 18-hour day in extremely cold temperatures.

Earlier in his career, Robert Kolowski served as a State trooper and field training officer. Until two weeks prior to his death, he was assigned to the Will County Task Force and involved in undercover operations. By all

accounts he was an outstanding officer and had a brilliant career with the State police. Special Agent Kolowski, in addition to his investigative work, was also involved in testing and training new recruits. The department chose him to be a supervisor over cadets at the Illinois State Police Academy in 1988.

In the course of his career, Special Agent Kolowski was exposed to strenuous and arduous activities. In 1980, he was involved in a shoot-out in which he and his partner fired 21 shots at an assailant, striking him 13 times before he fell. Up until his death, Robert Kolowski suffered nightmares related to that incident.

Special Agent Kolowski's physical and emotional stress continued when he was assigned to the Will County Task Force. The Will County Task Force was often involved in undercover operations, including drug surveillance and arrests. This task force had problems with personnel because many officers had taken early retirement. Furthermore, Special Agent Kolowski had a personal conflict with one of his supervisors. In addition to the physically demanding assignments on the task force, Special Agent Kolowski may have been subjected to ethnic slurs and other public humiliation by this supervisor. Special Agent Kolowski filed a formal grievance in late January, 1993. This unit was disbanded on February 11, 1993, only two weeks before Robert Kolowski's death on February 25, 1993.

After the dissolution of the Will County Task Force, Robert Kolowski returned to the Division of Criminal Investigations and continued his undercover work. On February 18, 1993, he worked from 8:26 a.m. to 5:20 p.m. and then was called out again at 11:45 p.m. and worked until 4:00 a.m. the following morning, a 13-hour day. On February 19, he began working at 9:39 a.m. and worked until 3:30 a.m. the next morning, an 18-hour day.

During the last 12 hours of that 18-hour day, he was assigned to a drug surveillance case. Temperatures that day were extremely cold, and one officer had to write out the incident report from inside a vehicle in order to keep his pen from freezing. That drug surveillance ended with arrests and recovery of over 300 pounds of cannabis. Robert Kolowski assisted in transporting the cannabis from the suspect's vehicle to a police vehicle, and again from the police vehicle into evidence storage.

Soon after these arrests, Robert Kolowski complained of a tightness in his chest, congestion, and hot and cold sweats. Thinking it was only a cold or the flu, he did not see a doctor. Robert Kolowski called in sick on February 22 and 23, 1993. Although his symptoms did not improve, he did go to work on February 24 in order to catch up on his paperwork. On February 25, 1993, he went into work, again with what he believed to be symptoms of a cold or influenza. That afternoon he was called out to investigate a firearm owner's identification card violation. As he entered his squad car in the parking lot of Division 5 headquarters, he suffered a heart attack. He was rushed by ambulance to St. Joseph Hospital, where he was pronounced dead at 4:37 p.m.

The issue presented for determination by the Court is whether the decedent was killed in the line of duty as contemplated by the Act. More specifically, the issues are whether his life was lost as a result of injury received in the active performance of duties as a State police officer and whether the injury arose from violence or other accidental causes.

This Court has recognized that cases involving heart attacks are "among the most difficult presented * * *." (*In re Application of Smith* (1990), 43 Ill. Ct. Cl. 183.) The Court continued: "In deciding whether an award should

be granted an effort is made to determine whether the activities the decedent was performing precipitated the heart attack. In cases where a decedent is performing strenuous physical activities at the time the attack is suffered, the Court has consistently granted awards. However, in cases where the decedent was not performing strenuous physical activities when the heart attack was suffered, the Court must closely examine whether the circumstances surrounding the decedent's performance of duties prior to the time the fatal heart attack was suffered may have precipitated the attack." *Smith, supra.*

While the heart attack must have been the result of performance of duties, in some cases it is relevant to examine the "circumstances and events further preceding the death than those occurring solely on the day of the heart attack as far as is practical and not overly remote." (*Smith* at 186-87.) In other cases, the Court has examined the hours the decedent worked just prior to his death in order to show that the heart attack the decedent suffered constituted an injury arising from "other accidental cause." In *In re Application of Feehan* (1980), 34 Ill. Ct. Cl. 293, the Court noted that a police officer who suffered a fatal heart attack after testifying in a burglary case had been working an extraordinary amount of overtime in addition to the stressful nature of drug surveillance and stakeouts. In *Smith, supra,* the Court noted that a jailer who suffered a fatal heart attack worked 14 straight days under stressful conditions. In both cases, the Court granted an award under the Act.

The facts in the case at hand are analogous to those in *Feehan* and *Smith*. Robert Kolowski worked a 13-hour day and a second 18-hour day just prior to his illness. He worked drug surveillance and made arrests in extremely cold conditions. In the end, Robert Kolowski and his team

made several arrests and recovered over 300 pounds of cannabis. Robert Kolowski further unloaded and reloaded the 300 pounds of cannabis in these extremely cold temperatures. Within a day of this mentally and physically exhausting work, he began to notice symptoms of what he thought was a bad chest cold, but may have been early signs of coronary stress. After missing two days of work, he returned to his job while suffering the same symptoms. While on the job, he suffered a fatal heart attack.

Looking beyond the events that occurred just prior to Robert Kolowski's death, we note that he suffered a tremendous amount of job-related stress throughout his career. He was involved in a shooting in 1980 that haunted him the rest of his life. Also, he allegedly suffered mental abuse and humiliation with the Will County Task Force.

This Court has recognized the stressful nature of police duties, especially those involving arrests, searches, and surveillance. (See *Feehan, supra.*) Even an officer who worked as a fingerprint technician and who complained of pressure in his work received an award from this Court. See *In re Application of Nicholson* (1979), 33 Ill. Ct. Cl. 319.

This Court has previously granted an award in the case of a heart attack which occurred while a deputy sheriff was shoveling snow. The deputy sheriff was shoveling snow away from the car which had become stuck while he was en route to serve process on a certain individual. Clearly that activity was part of the performance of his duties as a law enforcement officer. (*In re Application of Parchert* (1980), 33 Ill. Ct. Cl. 312.) In addition, in *In re Application of Ford* (1986), 38 Ill. Ct. Cl. 306, this Court entered an award for an officer who suffered a heart attack while walking a new beat alone in a high crime area. The new beat included an area where gang activities and

shootings had occurred. The stress therefore associated with that risk contributed to his death which was the result of "other accidental cause." Therefore, the officer was killed in the line of duty, and this Court entered an award.

In the present case, Robert Kolowski, having been exposed to an extremely high stress situation, was called from his office to conduct an investigation. In the course of conducting that investigation, he died of a heart attack.

This Court has also made an award where the heart attack occurred off duty when the evidence established that the decedent had to exert or had encountered strenuous exertion on the job. Subsequent to the extreme physical exertion, the officer died on the next afternoon. This is similar to the case at hand where Kolowski had encountered considerable physical exertion a week prior to the heart attack. He had complained about not feeling well after the exertion, and he ultimately had the heart attack. See *In re Application of Sparling* (1983), 36 Ill. Ct. Cl. 353.

For the reasons stated above, we award the Claimant the sum of fifty thousand dollars ($50,000).