(No. 93-CC-2602– )

*In re* APPLICATION OF ROBERTA J. MEDLICOTT

*Opinion filed May 17, 1996.*

PAUL C. SHEILS, for Claimant.

JIM RYAN, Attorney General (ROBERT J. SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

This claim is before the Court by reason of the death of Robert G. Medlicott, Sr., a deputy chief with the City of Berwyn Fire Department. The decedent's widow, Roberta J. Medlicott, seeks compensation pursuant to the Law Enforcement Officers and Firemen Compensation

Act (820 ILCS 315/1-4) (hereinafter referred to as the "Act"). On May 10, 1993, the Court remanded this case to the Commissioner to hold a hearing to determine whether Deputy Chief Medlicott had been "killed in the line of duty" as defined by the Act. The report indicated that Claimant had met the other conditions precedent for an award under the Act.

The facts are as follows: On July 29, 1992, at approximately 6:00 a.m., Deputy Chief Robert Medlicott was discovered dead in his bunk at the Berwyn fire house. The cause of death was determined to be cardiopulmonary arrest secondary to dilated cardiomyopathy.

Former Fire Chief Ron Ballard testified that he was the fire chief at the time of Deputy Chief Medlicott's death. Chief Ballard testified that the normal number of work days per month for a firefighter was seven to eight days or 168 to 192 hours, depending on a number of factors, including the number of days in the month and the days on which the shift falls.

Due to a number of injured officers, Deputy Chief Medlicott was required to work overtime. In June, 1992, the decedent worked 290 hours and in July, 1992, up to the date of his death on the 29th, he had worked 264 hours.

Chief Ballard testified that firemen, while on duty, are subject to the stress of answering an alarm and the stress of being cooped up in the firehouse for extended periods of time. The Claimant, Mrs. Medlicott, testified that Mr. Medlicott had to cancel plans to go to Boy Scout camp with his son the last two weeks of July, 1992, due to the overtime he was required to work.

According to the time records in evidence, Deputy Chief Robert Medlicott started his last shift on the 27th

day of July, on overtime. The next day, July 28th, was his regular shift. Chief Ballard testified a regular shift is 24 hours, so Deputy Chief Robert Medlicott was working back-to-back 24-hour shifts. Mrs. Medlicott said that when he left for work on the 27th, Deputy Chief Robert Medlicott seemed fine.

The incident reports in evidence show that at 6:45 p.m. on July 28, 1995, the second day of his double shift, the decedent answered a fire call. There was nothing particularly dramatic about the call but Chief Ballard testified, when the alarm sounds, the men don't know whether they will be involved in a dramatic fire or not. As an officer, the decedent would not have personally fought the fire but would have directed others.

The detail headed by Deputy Chief Medlicott was back in service by 7:30 that evening and there does not seem to be anyone who could say what time he laid down in his bunk for the night. Chief Ballard did say, however, that Deputy Chief Robert Medlicott was on duty, subject to an alarm at any time, until he was discovered at 6:00 a.m. on July 29, 1992.

The medical records of Robert Medlicott were examined by William Brice Buckingham, M.D. who testified as an expert. The records showed that Robert Medlicott had been treated for about one year prior to his death. In August of 1991, a cardioversion was performed by a Dr. Pacold. At that time, Robert Medlicott had a rapid pulse which had failed to respond to beta blockers or Digoxin. The cardioversion successfully re-regulated his heart rate. The doctor advised Mr. Medlicott to abstain from beer. Mr. Medlicott was an ex-smoker, having given up cigarettes ten years before, and he had been treated for the rapid pulse about ten years prior to his death.

Mrs. Medlicott testified that the decedent was following the doctor's orders with respect to taking his medications and abstaining from alcohol. She further testified that the decedent was not under any work restrictions from the doctor.

Dr. Buckingham's report stated, "The work hours * * * could be an aggravating or precipitating factor causing this patient's death * * * working the number of hours described * * * could interfere sufficiently enough with his cardiac mechanism and add sufficient burden to his cardiac function to precipitate such an event." Dr. Buckingham further testified that Robert Medlicott had a serious disease and was at risk "virtually any time." It is important that Dr. Buckingham did not testify that the overtime work caused the death to a reasonable degree of medical certainty.

The Act provides for compensation to the designated beneficiary where the fireman is "killed in the line of duty." The Act defines "killed in the line of duty" as "losing one's life as a result of injury received in the active performance of duties as a * * * fireman * * * if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause."

The sole issue before this Court is whether the decedent was killed in the line of duty. In addressing this issue, the Court has previously stated:

"Cases involving heart attacks are among the most difficult presented to this Court. The Court recognizes that police work involves stress and strain which can lead to heart attacks. In deciding whether an award should be granted, an effort is made to determine whether the activities the decedent was performing precipitated the heart attack. In cases where a decedent is performing strenuous physical activities at the time the attack is suffered, the court has consistently granted awards. However, in cases where the decedent was not performing strenuous physical activities when the heart attack was suffered, the Court must closely examine whether the circumstances surrounding the

decedent's performance of duties prior to the time the fatal heart attack was suffered may have precipitated the attack." *In re Application of Smith* (1990), 43 Ill. Ct. Cl. 183.

In this case, Deputy Chief Medlicott had worked a substantial amount of overtime in the two months preceding his death and he did respond to a fire call on July 28, 1992, but the record indicated that it was not a serious incident. Claimant urges this Court to conclude that the cumulative effect of working overtime and the daily stress of waiting for the fire alarm were the cause of the decedent's heart attack.

Claimant strongly relies on the Court's opinion in *In re Application of Feehan* (1980), 34 Ill. Ct. Cl. 293. The facts in *Feehan*, however, are clearly distinguishable. Terry Wayne Feehan was a sheriff's investigator. He was found unconscious on a third floor bathroom of a county courthouse. The circumstances leading to Investigator Feehan's death were that he put in an extraordinary amount of overtime in the active performance of stressful police duties prior to his death. The work he performed consisted of investigating crimes committed and about to be committed, making arrests, performing searches, and conducting surveillance and stakeouts in connection with a burglary and drug dealing. On the date of his death, he traveled to deliver evidence to a crime lab. Upon his return, he was called to testify at a hearing in a burglary case. Investigator Feehan was unaware he would have to testify. He began his testimony at 11:35 a.m. and testified for approximately 30 minutes. He left the courtroom and was found dead in the restroom shortly thereafter. Investigator Feehan was in the active performance of stressful duties just prior to his death.

Clearly, obligation and rigors faced daily by our firefighters result in stress for them. However, the evidence

in the instant case is too remote to establish a causal connection between the employment and the death. At the time of death, Claimant was not involved in any strenuous activity. He was not responding to a call, and in fact he had long returned from the last call. The decedent apparently went to sleep and then died.

The overtime and the daily stress of his duties as a fireman are too remote to establish a causal connection between his duties and his death. There is simply not enough evidence to establish that the circumstances surrounding decedent's performance of duties prior to the time the fatal heart attack was suffered precipitated the heart attack.

The Court must acknowledge the decedent's contributions to the public during his career and the tragedy of his untimely death; however, there is not enough evidence to establish that Deputy Chief Medlicott was "killed in the line of duty."

We are not unsympathetic to the loss of Claimant. However, as a Court, we must follow the law. We have stretched the statutory definition of killed in the line of duty to its extreme in many cases but the facts of this case are well beyond that limit.

Deputy Chief Medlicott was a fine fireman, but he was not killed by violence or other accidental cause. He had a serious disease and died of that disease.

For the foregoing reasons, it is the order of the Court that Claimant's claim be and hereby is denied.